Thank you. And you ready to proceed? Yes. I have on my minutesheet Mr. Williams, but on my screen I see Mr. LaPierre. Is that just the way the screen is worded, or do we have a substitute counsel? No, Your Honor. I substituted him to take this for Mr. Williams. Okay. I'm sure that I have an email to that effect somewhere. It's in the balls of my inbox somewhere. Okay. You want to proceed? Yes. Good morning, Your Honor. Good morning. May it please the Court, Robert McGuire from the office of the New Jersey Attorney General for the defendant, Appellant William Hellman. At the outset, Your Honors, I would like to reserve two minutes for rebuttal. All right. This case is solely about the issue of whether there was a violation of constitutional rights. And this Court should reverse the determination of the district court because it erred in the qualified immunity analysis, which consists of two separate parts. But we know what it consists of. Why is the district court wrong? Well, let's start with whether there was a violation of a constitutional right. On at least two occasions, this Court has addressed the issue of whether the retention of seized property under New Jersey law violates constitutional rights. Right. Let's look at it. Let me speak for myself, not frame the issue the way the district court framed the issue in terms of holding onto the property and not giving notice of the fact that they were not going to go to forfeiture with it. That's the way the district court framed the issue. But it seems to me there's another way to look at this. And that's the destruction of the property, not speaking only about the ban, without giving notice or without going to the forfeiture procedure, which would have required notice. We don't have any cases like that with the property that has been seized, has been destroyed, and the person who owned the property, the owner of the property, was not notified of the pending seizure. And here you only had, I believe, six days between the 90 days in which he was told the city would seek forfeiture and the time at which the property was actually destroyed. That's very different from all the other cases. It is a different factual context, Your Honor, but I still think that the basic holdings of Revell and Zitter apply. Are you suggesting, Mr. McGuire, that the seizure and the destruction of the van, both those things, the seizure, the declaration that the van was abandoned, and then the destruction of the van, were all undertaken in accordance with state-approved procedures? Your Honor, again, I want to be careful to frame this issue because it is not alleged that Mr. Hellman actually took part in the destruction of the vehicle. The allegation is he failed to give notice. Yeah, but I'm just asking you a straightforward question. Is the position that the state has is that everything that happened with respect to that van was done in accordance with state-approved and set procedures? Your Honor, with respect to the destruction of the van at some point, it is unclear whether statutory requirements that might be applicable to that were adhered to. Well, this is pretty clear in your brief. On pages 13 and 14 of your own brief, you lay out the procedures in New Jersey for obtaining property, and you very specifically say, and I can pull it up in a second, but I'm afraid I'll lose your picture if I do, you specifically say what the New Jersey statutes and rules require to ultimate forfeiture. And it's notice and an opportunity to respond, and I will pull that up in a second here. This is not a – I'm not trying to fool you or anything. I just need to know if the state's position is – this is not asking about qualified immunity at this point. This is asking, as you started, was there a constitutional violation? And pertinent to that, I think, is was the state – was what happened here in accordance with state procedures? So I'm asking you, was it – and I take it that you're saying from your briefing and your supplemental briefing, I took you to be arguing the seizure was according to state procedures. It was a search warrant, it was seized, and that was accordance with state procedure. And that the assertion was then made that we didn't have to worry about the abandoned property statute because it doesn't apply here because there's a whole separate thing associated with forfeiture of seized property. And we have complied with whatever we had to comply with there. And having complied with that, we were in a position to dispose of the property as we did. And there was nothing wrong with what happened. Now, maybe I'm wrong about that, but I thought that the state's position was we did everything by the book, state procedures. So I'm just asking you whether I'm understanding you right or not, because if I'm not, that's important to me. Is it or is it not the case that the state's position is we followed our procedures and everything we did was okay? Your Honor, the reason – again, I want to first address whether the abandonment statute applied. Our argument was that statute did not apply, and therefore, whatever procedures deal with vehicles found abandoned were not applicable. We didn't have to comply with it. We all agree. So I understand that's your position. So now I'm coming back to my bottom line position, my question to you, which is are you saying that what you did here, you being the you generally, the state, right? Obviously not you personally, Mr. McGuire, but that what happened here was in accordance with state procedures. And, Your Honor, again, my role here is to defend Mr. Howman. This is not a hard question. You just got to answer the question. Just answer it. Either the position of the state is we went off the rails, but it doesn't matter, or it is we never went off the rails. That's the question. You just need to answer it. If you can't answer it, you got to say, I just don't know. But don't give me another answer yet. I mean, you can continue and give explanation, but please just answer the question. Your Honor, if I could, the issue is the state is not a defendant here. The city of Trenton is not a defendant here. The prosecutor's office is not a defendant here. Okay. All given, please don't answer a different question. Just answer the question I'm asking you. If what you're saying to me is we've got no position and we're not saying, then just say that. But the question to you is not a hard one. It is, did the state follow its own procedures, the actors who are state actors, did they act in accordance with state procedure or not in the course of events which resulted in the scrapping of this van? That's the question. I'd love an answer to it, and you can give whatever explanation you want afterwards, but I'd really, really, really like you to answer the question. Yeah, I'd like that, too. Your Honor, I don't know with respect to the declaration of abandonment and the destruction of the vehicle whether other defendants complied with the state law. The only defendant in this case is Mr. Howman, and the issue is would Mr. Howman in his position know by not giving notice of abandonment? You're back to the notice. You're back to the notice at the time. It did change a little bit because now you're on notice of abandonment as opposed to notice of the seizure, which is what the district court focused on. I'm reading now from the bottom of page 13, the top of 14 of your brief, quoting, New Jersey forfeiture law is plain that if, comma, if a complaint for forfeiture has not been filed as to seize property within 90 days of seizure, forfeiture cannot occur. Now, I think we can all agree that if you take someone's car and you crush it, kind of like Goldfinger or Oddjob drives the car and the big crane comes down and crushes the car, if you do that to a car, it seems to me that's forfeiture. Now, it may not fit within the legal definition of what a forfeiture is only because nobody, I don't think, envisioned this happening, but it's clearly the property interest is clearly been forfeited, it seems to me, and you've laid out what New Jersey law requires for that to happen. We all agree that never occurred here. And the issue becomes, again, Your Honors, what was Mr. Howman's role in that and what would he understand? Wasn't he the forfeiture guy? His title was chief of forfeiture? Yeah, and at this point, aren't you shifting gears? The question, the first question you teed up was, was there a constitutional violation? Now you're moving it to what did Mr. Howman know and a qualified immunity discussion about what would a reasonable person know, was it clearly established? So, stay on the ground you started on, which is constitutional violation ground. So, at that question, I'm curious to hear your answer to Judge McKee's interrogatory as well. Is that effectively a forfeiture if you scrap it? So, it can't possibly be returned, except maybe, you know, if you want to turn it into a piece of modern art in your backyard. Or, Your Honors, the other avenue open to a plaintiff with respect to a claim like this, which presents the possibility of due process and getting the value of your property is a tort action. This was one of the things that the court in Zitter, on which Judge McKee was on the panel, indicated that there is the option of filing a tort action, a tort action for conversion. And therefore, even to the extent that you accept the premise that crushing the car could quote unquote be called a forfeiture, there is still a legal avenue available that gives the plaintiff the value of their property through filing a tort action. But it's not, it isn't their property, it's the value of their property. And in Parrott and in Hudson, we were dealing with prisoner cases and there was a balancing going on. We cited Matthews versus Eldridge. Neither side in this case, to my surprise, cited Matthews, which I thought was kind of important in judging procedural due process questions. But there's a, I mean, aren't we in a different world here where, well, let me step back and ask it this way. Isn't it in fact the case that procedural due process in its standard format requires a hearing in advance before there's a deprivation of a property right, of a constitutionally protected property right? Matthews does require time, a notice to an opportunity to be heard and a meaningful time and a meaningful amount. Right. And to say that there are adequate post deprivation remedies is supposed to be an exception to that general rule, is it not? It is, Your Honor. Okay. Why would we make an exception to that general rule in this instance? What is it that makes this case different that would permit the state to not go through ordinary forfeiture procedures with the notice and an opportunity to be heard and just take the guy's van and put it in a crusher? What's different about this case? What's different about this case, Your Honor, is that there is the availability of compensation for the property. That doesn't make it different. You could say that in any case. You could always say, I'll give you money later. So that can't be, that can't be the reason for an exception. There's got to be some, I mean, at least in the prisoner cases, you could see the Supreme Court saying, well, there's some balancing going on here. It looks like people may have done stuff they weren't supposed to do. This isn't how it's supposed to happen. But you know what? We're in a prison setting. There's reduced privacy and possessory interests, blah, blah, blah. I shouldn't say blah, blah, blah about those five people at the Supreme Court, but you get what I'm getting. There was something going on there that made the court say, on balance, this is different. We're not in the prisoner setting here. We're just a citizen, maybe a citizen that the police and the prosecutor's office didn't feel all that warmly told, but just a citizen. And they take his stuff and they destroy it. So what's exceptional about this case where you go, you know what? Forget that whole notice in advance, an opportunity to be heard. We'll give you money later. What makes this case different? Your Honor, it has been accepted by this court, the Supreme Court, particularly in Zitter, that the opportunity to file a tort action. What would name the cases you're talking about? That would be Zitter, Your Honor. That wasn't just one of the prison cases. It seems to be a very different context. And in Matthews, the remedy in Matthews is really easy. You get your delinquent Social Security payments back or you get retroactive payments. The court even uses the term retroactive payments so you can be made whole. So the denial of pre-deprivation notice is not a big deal because you can basically be put back to the position you were in before the deprivation. You can't do that here because he can't recreate this vehicle. He can't uncrush the vehicle. I guess arguably you could go out and buy the same vehicle and put the same kind of spray paint on it and mark it the same, but I don't hear you arguing that. I don't hear about that. That's exactly what the point is, is that there is the opportunity through state tort law to get the compensation that's necessary to restore whatever was lost. And just because my time is running short, I do want to get to the second aspect of qualified immunity. I don't want to speak for my colleagues, but we got time. I got time. We do. Don't shorten up your answer on the basis of my red lights on. I agree. Tomorrow is Saturday. We don't have to go to work. We can't hear. Can I, Mr. McGuire, go back to a question that Judge Jordan keeps asking but to which there has not been, I think, an adequate answer, which is very simply, does not due process require a hearing? A hearing, that is due process requires a hearing before the destruction of property. It requires notice and an opportunity to be heard. The position on behalf of Mr. Howman would be that at the point where a forfeiture was not instituted and the plaintiff would know 90 days in advance that the property was already in their hands, that there was the opportunity for making any sort of application in the criminal case. I don't understand what you just said. I just don't. Because the criminal case was dropped, right? Not for several years, Your Honor. I understand. This is all, and again. Both of your answers can't be right. If the criminal case dragged on for several years and he was told that we're going to bring a forfeiture within 90 days, help me understand how that comes together. You're saying he had 90 days to bring, I guess it would be a replevant action. He couldn't do that in the forfeiture action because it wasn't there. That's the problem. Your Honor, typically the way it works in New Jersey is if a forfeiture action is instituted. And in the specific instance of this case, the state believes that what occurred was the forfeiture for a certain currency was instituted. What will happen then? How long was it between the seizure of the money and the forfeiture proceeding? Well, Your Honor, here comes the issue. Because once a defendant defends the criminal case, what typically will occur is that the civil action will be stayed pending the outcome of the civil case. So in instances where the state institutes a forfeiture procedure and the defendant says you can't see this because I'm innocent of the crime, what typically will happen is that the civil action will be stayed. How long was it before between the seizure and the civil action? Put it that way. The introduction of the civil action. Forget I said forfeiture. It's not in this record, Your Honor, but it would have been by July 27 of 2016 because a forfeiture action has to be instituted within 90 days. So within 90 days they moved on the money. But he apparently, and this is in the record, he saw that the car and the van were not in the forfeiture notice that he received. And he started making inquiries within the 90 day period. Is that accurate? It is not, Your Honor. The 90 day period is the period in which to seek forfeiture. The allegations of the complaint is shortly before a proceeding. Now, if it were a proceeding, the only proceeding that would have happened after the filing of the complaint would be a trial, which typically would occur about three months. The trial date and the forfeiture action is typically about three months after the filing of the complaint. But they decided not to proceed with the formal forfeiture, right? I mean, that's the position you've taken. There's no obligation on us to forfeit. And the decision was made not to forfeit, right? With respect to the van, Your Honor. With respect to currency, there was a forfeiture. I'm sorry. And I'm just sticking to the van and the car. And right now we're just talking about the van. So there was a decision not to forfeit. And that 90 days was up. And then within less than a week, if I understand the record correctly, six days later, the state says this is abandoned and we own it. Is that right? That is the allegation of the complaint. Well, right. And we have to take that as true. It's not disputed. It's not disputed, is it? Well, Your Honor, it's a motion to dismiss. So it has to be accepted as true. I know. But the thing is not disputed. Let's go through the legality for a second and rely upon common sense. Yeah. And, of course, if you're not taking the position that it was taken as abandoned, then I don't know where you go with that. But anyway, the allegation in the complaint is it was treated as abandoned. Title was delivered to this scrap company. And they took title and they destroyed it. And that happened within less than a week of the 90-day expiration, right? That is correct, Your Honor. Okay. So if we take all that as true, my question to you is, is that not either an assertion of the right to declare something abandoned, which would put you in the abandonment statute, or, in fact, a forfeiture? Or is there some third, some tertium quid out there, a third thing you want to call this? There is, Your Honor, because, again, the focus here needs to be on the only defendant who is in the case in his role. So there's no allegation in the complaint. The focus should be on our questions. That's where your focus should be. Yeah. So stick with my question and don't start talking about Mr. Howman right now. If you want to do that, I've got – so I said we've got lots of time. I hope you do, too. And I shouldn't be flipped. We started late. That's on us. Apologies to counsel for that. And you have other things going on in your life, I'm sure, than talking to us, as much as we're all enjoying this together. But the question I'm trying to get you to answer is, is that not an exercise of the power that the state has under the Abandonment Statute, or an actual forfeiture, whether you call it that or not? Or is there some third thing that you think that is? Because if it's a third thing, I'm not sure what it is. I think you're in those two realms. You've either exercised the power to declare it abandoned or the power to forfeit it. But I'm putting it to you. What's going on there? Your Honor, this is a motion to dismiss. So, therefore, all we have are the allegations of the complaint. And I go, I understand, Your Honor's review of the factual scenario, which includes allegations that the city of Trenton transferred title to Hawks and that Hawks destroyed the thing. But it is incumbent on this court, even if it defends this court's sensibilities with respect to what happened with respect to other people, to take into account that the only defendant in this case is Major Hounding. We very much appreciate your giving us our job description. It's wonderful. It's very helpful. I've been doing this job for 25 years, and I don't think I was ever had the privilege before this very moment, this very day, of having an attorney give me my job description. I think, fortunately, as I look back, I don't think I've ever deviated from my job as you've laid out my duties for me. That's helpful. I'll keep that in mind going forward. Your job description is to answer the damn questions that we're asking. So, can we get that understanding? We'll do our job, and we'll take it. At least I'll take it. I won't speak for my colleagues. As you've defined it for us, I'll stay within that role. If you would just answer our questions rather than telling us what our job is, we will be here all day at this rate. We will be here all day. Yeah, and I'm not fooling with you, Mr. McGuire, when I say we'll give you a chance to talk about Mr. Howman. That is not out of my mind, and I don't think it's out of my colleagues' mind. We're conscious that there's a qualified immunity defense in play here. We're taking it very seriously. But there's some foundational stuff we're trying to deal with. So, let me take one last run at this, and if I can't get an answer, speaking of abandonment, I will abandon it. But here's the question for you one more time. If you did, what is alleged in the complaint? Is that not either the exercise of the power under the statute to say something is abandoned? That is the abandonment statute. Or is it not, in effect, a forfeiture? And if you think it's neither of those things and it's some third thing, what is it? That's the question I'm putting to you. Can you please answer that? And my understanding, Your Honors, again, based on the allegations of the complaint, is this was deemed abandoned. So, it would be a proceeding in line with a determination that seized property had been abandoned. Okay. So, if that's the case, then your supplemental memo, which says abandoned property, just that abandonment statute has nothing to do with this, that's just not accurate, right? Because then we are looking at what the abandonment statute says. We've got to ask ourselves, did you or did you not comply with the abandonment statute? That's a piece for us to be concerned about, isn't it, as we ask the question of whether state procedures were followed? Your Honors, with respect to that particular abandonment statute, it does not appear to apply in the context of property that was seized as part of a criminal action. And you can tell that by looking at the various attributes of the statute, which go to determining who the owner is and trying to make a determination of ownership, and then giving notice to the person and who this vehicle is that we now have. Didn't you just say it did apply a few minutes ago? We can't play the recording back. I guess we could. What I did say, Your Honors, was that procedures as to abandonment of evidence would apply. I do not think that this particular statute… What evidence? Why is the truck not going to the realm of evidence? Are you looking at the truck as evidence? I'm sorry, Your Honors. Abandonment of evidence. It's seized property, Your Honors. Seized property in a criminal action. Okay. Well, let me ask this then. So is it the position that you're taking on behalf of Mr. Hellman that the state owes more protection to the owner of a vehicle which is actually abandoned than it does to the owner of property who it knows and who it has forcibly taken the property from? That there's more entitlement to due process and notice and an opportunity to be heard by somebody who leaves their car at the side of the road and just leaves it. They get more than somebody that the state comes to and forcibly takes property away from. Because that's what it sounds like you're saying, that the abandonment statute doesn't apply here because this wasn't found abandoned. We didn't find this car abandoned. We came and took it. And therefore, we don't have to give you the kind of notice that you're entitled to if we find it abandoned. Have I understood that correctly? Your Honors, it would not be that there is a lesser entitlement to notice. My only contention is this particular statute and its mechanics do not apply in this factual circumstance. I'm not saying that there is not an obligation to provide some sort of… Well, it sounds like that's exactly what's being asserted because the assertion here is it's not a forfeiture, so you didn't get any notice for that. We didn't owe you anything for that. And it's not an abandonment and an exercise of the power of the state with respect to abandoned property, so we didn't owe you any notice under that. We didn't owe you any notice at all. We didn't owe you any notice because we just can give you money later. That seems to be the constitutional argument. That is, was there a constitutional violation of procedural due process? I'm trying to figure out what the position is with respect to whether there's a constitutional violation, and the assertion is there was none. And I'm following the paths that are laid out in the briefing, and it sounds to me like the position you're taking is it's not a forfeiture. It's not an abandonment. We don't owe you any notice or opportunity to be heard. We can just give you money later, period. Have I got the position correct? The position, Your Honor, would be that whatever… But that's the yes or no, and then explain it. Answer this question yes or no. Is that your position? That does devolve to where our position gets to in that. Okay. The statute does not apply. There may be obligations under the statute. Whether the actual time periods within that statute are of a constitutional dimension I think is a separate issue. And then the final issue is even if those procedures were not followed so that the time periods set forth in the statute were not followed, does the consequence of not following that statute mean that there was a constitutional violation in the state's position? And Mr. Howland's position would be it is not a constitutional violation if, as the court found in Zitter and Revell, there are avenues available for the person whose property has been taken to try and get either the property or the value of that property back. Well, in Revell, he got his property back. Correct. There wasn't a permanent deprivation of property. There was a very unfortunate series of events that deprived the man of his property for a period of time, but he got it back. Here, Mr. Forston's never getting that van back, ever, because the state took it and they destroyed it, and they destroyed it within less than a week of the statutory time period for forfeiture. But let's leave that to the side for a second, and my colleagues will indulge me. Let me ask this. On the question of what a reasonable state actor would know, is it material or is it a question of fact? Because you've taken the position that this is a pure question of law and therefore can be disposed of. You know, we can exercise jurisdiction right now. There's no question of fact. Is it, based on the allegations of the complaint, open to question what the motivations that Mr. Howland had were? That is, the complaint is replete with allegations, and it's reflected in the district court's opinion, too, that there was a lot of bad blood here, that Mr. Forston was impolite, to say the least, in the things he said to the police and other law enforcement people, and that they cited him with great regularity, with violations. There was a genuine animosity. Now, if we read the complaint to be mean in that, does it put Mr. Howland's motivations in question and therefore put us in a position where we would have to say, maybe this isn't a pure question of law? Your Honor, it comes down to the factual allegations of the complaint and what, allegedly, Mr. Howland's involvement was, and the allegations here are not that he actually participated in declaring this vehicle abandoned or in having the item destroyed. And we are bounded by the allegations of the complaint. I think it's a Third Amendment complaint at this point. So, the issue with respect to Mr. Howland, there is no allegation that he participated in the determination of abandonment or in the destruction of the vehicle. The allegations as to him is that he did not provide notice of abandonment. Back to abandonment. It's like, this is, I often cite him. Professor Irwin Corey, this reminds me of a dialogue with Professor Irwin Corey. And that is to say, at least from my mind, it's not helpful. We're now back to the abandonment statute. I think what maybe you can sense is my frustration, I think it's Judge Jordan's, and I wouldn't be surprised if Judge Fuentes joins it. We're trying to get a handle on, forget the abandonment thing, let's not get back into that statute, on whether or not, sticking just at Hartman now, a reasonable person in his position would have reason to know that you can't just take someone's property, destroy it, not compensate anybody for it, and that's okay. And as a state actor, you can do that under Colorado State law. That's where we are. And I'm not sure what your answer to that is. Your Honor, my answer is not how your Honor characterized it. It is that Mr. Hellman has no right to actively participate and decide to declare something abandoned that is not abandoned. What is his title? Isn't he Chief of Forfeiture? He is, Your Honor. Well, can I ask you to help me with his job description since you've helped me with mine? What does that mean? I assume it means in something that could be brought on his trial, he's in charge of taking someone's property, seizing it, and then, and I think the district court clearly got this right, after that seizure, which is judicial and therefore absolute immunity, how it's disposed of is an administrative function, and therefore in the realm of qualified immunity. I think we all agree on that. Correct, Your Honor. The issue here is this is not property for which forfeiture is being sought. This is specifically property for which forfeiture has not been sought. That's the problem. Isn't that exactly what we hear? If he tried to abide by the process that you lay out on pages 13 and 14 of your brief, maybe we would be here. It's so goddamn contentious. Excuse my English. It's very contentious. But we'd be in a very different situation, wouldn't we? He would have gone through the forfeiture statute. That'd be a really easy resolution to this. He would have gotten a notice and the opportunity that the sections that you say in your brief would have afforded him. If there had been a forfeiture, absolutely he was entitled to those procedures. The issue becomes, and I understand the court's frustration with me with respect to trying to put the focus on Mr. Forfeiture. He is not the he's not the curator of all evidence. He's in a case. His role. Now we're back. We're back to evidence and not talking about his property. We're talking about we're talking about evidence. We are, Your Honor. But again, you ask what Mr. Fortune's title and role is in his role is to determine what forfeiture is going to be sought. Mr. Mr. Hellman, Mr. Hellman, you just crossed. You said Mr. Fortune, but you're meeting. You're talking about Mr. Hellman, right? Correct. Yeah. Okay. I'm with you. I'm with you. So, again, understanding his role. He is not. He is not the prosecutor's office who is tasked to preserve evidence, all evidence that might be used in a criminal trial. He is the person in charge of forfeitures. And he is. So is what you're saying is they just they named the wrong defendant. They got the wrong guy. Mr. Hellman had nothing to do with this. It was Mr. Hellman's the wrong guy. He is not the guy who is responsible for saying, you know what, that van. We're done. We're not going to forfeit it. I'm the chief of forfeiture. But I'm not the guy who said we're not taking forfeiture action. We're just we're just taking title and sending it to Hawks towing for scrap. Because if they if that if the assertion here is they got the wrong guy, then maybe there should be a fourth amendment complaint. You know, because the because what we're trying to get at here is it looks it looks to all the world, at least to me, like, like, either the state of New Jersey's procedures have a have a significant gap or something went off the rails. But it would be odd to think that the state would regularly do something like this. Or if they did do it regularly, it would be problematic. So if we got the wrong guy, say it's the wrong guy. It's Bob. You should be talking to Bob about that. But let's, let's get to the. Let's stick to the, to the heart of this and and and the question that I had asked you earlier is, does the fact that there appears to have been significant animosity between the law enforcement authorities, and Mr. Fortune bear on this at all, whether Mr. How many is entitled to qualify to me and you and your answer maybe it doesn't bear at all because Mr Hammond has no idea what's going on here. He's just the wrong guy. And that would be the position your honor is that it is not the fact that there may be bad blood between Mr fortune and many other persons. Well, who's the right guy, who's the person, because some human being made this decision. Do you know who it is. You're saying you're saying to us. It's not Mr Howman. Now maybe in the procedural context we're in, where it's asserted that Howman's the guy who did it, we have to take that as true right now, you know, maybe it's summary judgment, you get to win on that but at this point. Do we not have to accept that Mr Howman's the guy for purposes of this court's analysis. I mistake, Mr Hammond would take a position you were not required to make a, make a, allow the development of a record to show that Mr Hammond had some personal animosity that resulted in the destruction in the vehicle because his role does not include what happens to non forfeited property. That that to me is Professor inquiry, I don't understand it. Well, you just said that I don't. The issue is, if Mr Howman's role is to determine what should be forfeited, and to go after that material and to provide notice, which is acknowledged was provided that we are seeking forfeiture as to X property. Does he violate a constitutional right if property that is not his role to get is there and it's not part of a forfeiture is thereafter destroyed by other persons. Well, when you say it's not his to get. Isn't it in the allegations of the complaint that Mr portion was told your van and your car are going to be forfeited. It was alleged that. Okay, so we're taking that as given. We're just, that's the way the law works. It's alleged that he was told by the by the lawful authorities were forfeiting it. Now at some point they may have changed your mind. But on that basis, is it not entirely proper for us to be proceeding on the belief that Mr Howman, who is in charge of forfeiture is in fact the guy, the person making these decisions. If we take that as true, then I guess we're, we're maybe back to the earlier questions but I you know we've been around and around on it enough I'm, I'm, I'm content that that I think I understand your position, which is, he's the wrong guy but I'm not sure we can go with that. With that, at this stage. Mr. Mr McGuire it seems to me, however, that your, your position allows Mr Hausman to totally sidestep any, any requirement on his part for for notice and property can very easily be taken you give it to Mr Howman it gets destroyed. There is no notice required anywhere. And your honor, that would not be the position the position would be that Mr Howman has a particular role and obligation to give notice with respect to property that comes into his possession of his office, and that he seeks forfeiture up his role is not to be the custodian of all evidence in the case. And this, he is the only defendant in the present action and his, his, his role within it is important in trying to determine what notice he, he is required to get he gave the notice he was required to get. What notice did he give the record that certain trend police officers said they're going to for you're going to forfeit, you're going to see forfeiture of this van, a trend police officer told him that when the van was seized. Did he give you just said he gave the risk is required to give what notice did Mr Hoffman give. He filed forfeiture action, seeking forfeiture of the currency. And by, by, by analysis, if you can only get the property that you identify in your forfeiture action, anything that was not included in the forfeiture complaint is just based on simple logic property that is not. That's not simple logic that's Kafka logic. You can take a lot of stuff, just properly follow the law as to some stuff, ignore the law as to the other stuff, and it just goes into some kind of materialistic purgatory just kind of ceases to be. It does the invisibility cloak it disappears that that to me is not simple logic. I had trouble following that. Well, with respect to whether forfeiture is being sought any prop any person, any property that a person who was arrested has. They will know within 90 days. This is what we are trying to see forfeiture of and if that's crystal clear if a particular item is not included in the forfeiture complaint forfeiture is not soft. Now, there may be other property that was taken that will be held by the prosecutor's office and other prosecutors that may be evidence in the case for which forfeiture is not soft. What was the crime the van was he's forward back to evidence again. It's an operating under improper business hours. Improper Yes, those were the those were the that's the that's the offense in the van is was he. This is like the F 150 commercial with guys conducting the business that is on the back of his truck. How was the van relevant to his business. I don't know your honor. But again, Mr Hamlin was not involved in making a determination to seize the van. The only question was once other people who have been found to have immunity for this particular that particular allegation. One of those people did their job. Did he do his job in an unconstitutional manner. You do concede Mr McGuire that Mr for showing received no notice prior to the destruction of the van. That is what is the lesson of the complaint in the courthouse. Okay. All right. Are you time is obviously up we could go on as much as that we go on but it's time to play. Mr. Oh, is that what it is. Yes, your honor. I believe this case is fairly straightforward. And I believe the district court appropriately ruled on this action. Mr for Sean's vehicle was seized, according to the allegations of the complaint which must be accepted as true. It was seized for the purpose of forfeiture. Mr Hamlin, the defendant in this case is the chief of the forfeiture division. He is the person responsible for forfeiture of property on a New Jersey, New Jersey, in New Jersey law. Okay, well if he's responsible for forfeiture Mr up here, and he decides we're not forfeiting this van. What's. What is it in the law, do you think that that requires somebody who has that responsibility to in fact forfeit something they choose not to forfeit, because that mean Mr McGuire's argument, head on, if you would, I understand his argument to be. You've got one defendant left, and you haven't appealed as you have you haven't cross appealed and said, Hey, those other guys shouldn't have been dismissed from the case there. They shouldn't be given immunity so you can't, you can't go back and pull them back in. You got one guy. And frankly you got the wrong guy. Because how many. He does forfeiture, and they decided not to forfeit this van. So, you got nothing. I mean, not to put too fine a point I got the wrong person. And if you've got a complaint, it's not about forfeiture, it's about destruction of something and that's sad but you just, you're suing the wrong person. What's your response to that. Is that that is an evidentiary issue a factual issue. And they're saying that now that there was not actually seized solely for forfeiture, but was seized as evidence of a crime. That's a factual. And the allegations are received for forfeiture. It was Mr Holmes control as the chief of forfeiture and trying to, and once it was seized, no forfeiture action was filed, and it was destroyed and permanently seats. I believe there can be no real dispute that this is a seizure, they took it on the color of law. They decided that they were going to do that they did that and then they destroyed it permanently depriving Mr for Sean of the possession of his property. Why wasn't a suit in what we plug in wouldn't work your conversion estate court state election for conversion to recover the value of the property. Why wouldn't that be a sufficient post deprivation remedy to deal with the constitutional issue before us. That's not sufficient because the law is clear that a pre deprivation notice for notice, an opportunity to be heard before you are permanently deprived of your property is the constitutional statement. Permanently deprived of in there and the cases. I don't know if a case we're dealing with on these kinds of facts the cases that we've been talking about Matthews and consider all of them in the state law cases. They don't deal with the ultimate destruction of property. They, they envision a situation where there's a remedy to get the property back to you. And therefore, pre deprivation notice is not a constitutional dimension because, because of that remedy. If there's a situation where the property is gone, but you get the value of that property. My, my concern is and to me it's a hard question. I think he's an answered question is getting the value of that property sufficient to bring it within the language of those cases that talk about post deprivation remedies being adequate, where the remedy is here is not return to the property, obviously, but the compensation for compensation to the value of the property. Why isn't that sufficient under Matthews and those kinds of cases. I believe it is not sufficient because again, it is not the return of the property. My question now we're back to trying to. If you're getting the value of the property back not there's, it's not like a house with the law recognizes specific performance, and every piece of property, real property is unique. This is not real property is personal property. It's very, it was a pretty unique van very unique. But I'm assuming whoever, I use the expression to kid you, whoever tricked out that van initially could trick out another fan painted up so it looks like a state trooper van pot trooper whatever was on there. They could do that to another van. Let's even assume that the court went to the trouble of compensating him by getting a current model year van and in paying the cost of putting all this stuff on there. Why wouldn't that be sufficient. I just don't believe, and I don't believe there's any case where that says that a money judgment is sufficient after the destruction of a property that deprivation property is sufficient to meet the requirements of due process, which the hallmark is a pre deprivation. Notice in the hearing opportunity to be heard, doesn't have to be a full year but opportunity to be heard. And I don't believe it falls into an exception to that requirement that, oh, we have money judgment available to you. When you say we have no case. I mean we said that in rebel we quoted 11th Circuit case and said a civil cause of action for wrongful conversion of personal property under state law is a sufficient post deprivation remedy when it extends to unauthorized seizures of personal property by state officers. So there's a there's something there. I mean, now here I grant you this was not a quote unauthorized seizure was an authorized seizure, but there's a there's at least some language in our cases. And there's language in parent in Hudson that indicates that post deprivation remedies may be sufficient to meet the demands of procedural due process. How do you distinguish those cases and say this is different post deprivation is not an escape hatch here. What's your argument. Part of the difference is the cases in which there's an unauthorized or kind of something that's not foreseen post deprivation remedies become obviously what you have to do. For instance, an officer sees a vehicle unexpected by anybody and destroys it. And obviously, there's no way to foresee that happening and then give you the notice to be heard. Before the deprivation occurs in cases like that, I would agree that obviously post deprivation remedies, such as a suit for money damages is sufficient to meet the appropriate constitutional requirements. And specifically in all of these cases, the biggest issue is there is the opportunity to have the return of the feet for the return of the property. Okay, you just said, I don't see a distinction. You're saying that if we'll make you repeat it, you lost me. I don't see a distinction between the situation you just posited where the value of the property is sufficient compensation post deprivation to meet due process. And what we have here where the property is destroyed personal property is destroyed, but he clearly can put a dollar value on the value of that truck. And my distinction, and I apologize if I wasn't clear, there is that when the deprivation is not something that can be foreseen and pre deprivation due process cannot be afforded. And that is a compensation for the violation of his right to have his property, rather than just the cost of the property itself. So, your remedy would be the violation of his right to have his property. Not the value of the property. Correct. So, is it with that with the measure of those damages the value of the property, plus something. So that's an argument that's being made. The measure of the damages would be the value of the deprivation of the necessary they're not going to compensate for the deprivation of your right. I believe that may be something. Measured by the value of the property, you've been deprived them, is there a difference in the value of that right to have the property in the value of the property itself. Yes. How do you quantify that. And that is something that you don't think you actually quantify with anything to a jury itself I do believe the value of the property does play a role in that because obviously the quiet enjoyment of your property. The damages and that sounds like more and more in this case is bottoming on the aspect of punitive damages that you want to punish Hoffman for the violation of the deprivation for the violation of the Fourth Amendment. Right. And the punishment is more than him paying your client for the vehicle it's the vehicle plus x whatever x is not only how you compute x, but it's something that's what you're arguing in the x. Whatever value it is it's equal to the amount of punishment that you think the Fourth Amendment requires me to put it on. It's basically spite money is what you're talking about. There's a lot of spite on both sides here it seems to me but but that's what we that's where we are. Yes, your honor I don't I do not disagree with you that that that is a part of an aspect of this case, although I wouldn't. I wouldn't like to level our side of spite. Well, let's assume for the sake of argument that we thought okay yeah. There's a there's enough of an argument here of a constitutional violation with respect to the destruction of the band is how about the delivery car, which is also features prominently complaint. He got it back. Why isn't, why isn't rebel completely controlling as to that. Your delivery vehicle, my argument would have to be simply that the case is an opposite, which I was wrong to decide that there is a constitutional violation that occurs when you have a multi year deprivation. Are you saying that because of rebel we're not talking about money violation but he spent time in jail. Correct. Yeah, but, but now we're, we're not talking about jail time we're not talking about it we're talking about one thing. Violation of procedural due process with respect to two vehicles am I wrong about that. We're talking about a delivery car, and a van and procedural due process associated with those things, and that's it. Right. Okay, if that's all we're talking about, then I'm asking you a question about the delivery car. He got it back rebel says, does it not. You got it back, and you had opportunities we mean we went out of our way to say we're real sorry for Mr rebel, but he had opportunities. And those are the same opportunities your client had to pick the phone up and say, let me talk to Mr Hellman, I want my band that I want my excuse me I want my delivery car back, get my car back. And that's how we finally got it back. It's not you but his lawyer, maybe you haven't read his lawyer called someone's home and called somebody said what's the deal with the car we want the car back. And you got it back I don't know how many times he called before he got it. I got it. And he had available to him, you know, actions for replacement that the state by. In other words, isn't this on all fours with rebel with at least with respect to the delivery car. Yes, it is in our position was that rebel was wrong we decided. Okay, that was that was our position I thought it was, I thought it was a pretty good decision. What was the penmanship. But having said that, whether, whether it was wrong or not. It's the law. I mean, we're not in a position to throw that over as a, as a panel you'd need to do that in bank but okay so we can set the delivery card to the side, because all of us are agreed that rebel controls us to that. Now let's focus on the van. The van is different right because it's gone, he never gets that back. He gets, you know, if anything, a bunch of scrap back. But dealing with that. Are we. If we assume there's a constitutional violation. Do we have to say, well, then we've got some issues of fact here with respect to what how many new we don't. We've got assertions from the other side that this is just not, he has, he doesn't have personal knowledge of this. There's a, there's a problem to be addressed with respect to who was a decision maker, and who wasn't. And was there animosity. What was motivating people to act very quickly and get the thing destroyed those, those are all fact questions aren't they.  Okay, well if they're fact questions that we don't have jurisdiction do we because then we're in a position or a posture where there needs to be the development of a factual record before we know whether Mr Hellman's entitled to qualified immunity. Right. Yes, sure. To the extent he's alleging it's the wrong person or no knowledge to us today that would be a fact question to be determined at the lower court once there's been a record created, then we would have to in that circumstance. We would have to say to the district court, we understand your concern, but more has to be done here. Is that true. Yes, sure. I would think the denial of motion to dismiss would be appropriate and let the case go to discovery. It's the inside the defense. Some other dude did it. And that's what I was thinking of when I heard Mr. presentation that somebody we don't know who, but it's somebody that's not my guy. Your position is basically to vacate remand to make those factual determinations. My position would be to uphold the denial of the motions dismissed and permit the case to go into discovery and make exactly that those factual determinations. And that's, I believe, what we're bound here is Mr. He was legally responsible for this car, whether or not it was forfeited. It was forfeited pursuant to the authority vested in his position. I mean, we seized pursuant to the authority vested in his position. That's the allegation. Why wouldn't that allegation be enough to at least allow us to proceed on that on that basis. Sure, that's exactly just the court's analysis. So we're not looking at the initial seizure anymore. Figuring it for myself. I think that's wrong. What we're looking at is what happened to the truck afterwards. But just the truck, not the car without fortune getting an opportunity to prevent the ultimate destruction of the car, which to me looks like a forfeiture. Can't get it anymore because you never did abandon it. It was seized. It was taken from him. Yes, sure. And I believe the allegations that Mr. Then was seized with the authority of Mr. Taken and I believe forfeited when it was destroyed without any notice of opportunity or notice an opportunity to be heard. I believe those allegations are sufficient to survive a motion to dismiss on the due process claims. But the due process then gets us back to my original question is why wouldn't the state law possibility of a conversion action. Which would get him if he wanted. I would not want to hear, but that's for another court to decide if you wanted that would get in the value of the van. However, that's measured. Maybe it's the value of the van with depreciation and mileage. Maybe it's the value of that same van, but a current model van. Maybe it's the value next. Next year's van. Maybe it's the value of that for the most stable aspects of the client. The current model of that van. I'm not sure how old it was. Plus, whatever it cost them to put all the stuff on there. They had on there, whatever that is, and maybe throw in some money for punishing Hartman for the seizure, whatever that is determined to be. But somewhere between $1000 and that amount, which would cause it to be struck down because it was improperly excessive. Whatever that value is. Why wouldn't that be enough to get past the due process claim using the analysis of all of our Supreme Court jurisprudence dealing with post seizure deprivation? Your Honor, there's two parts of that. One of which is, I don't believe this case falls into an exception when post deprivation remedies are permissible as opposed to pre-deprivation remedy. What is that exception? The exception is where there is no adequate remedy post deprivation. Then you've got to afford the opportunity, wherever that hearing looks like. At least it's got to be noticed and some opportunity to come forward to contest the deprivation of the property. You've got to do that beforehand. But where there is an adequate opportunity afterward, it doesn't have to be beforehand. That's my question. Why aren't we in the universe where that formula that I spelled out in the jury would have to put a dollar value on that? Why isn't the possibility of that recovery in a conversion action sufficient to defeat you on the due process claim? Your Honor, it is our position that it is insufficient on the basis that it does not provide an opportunity to prevent the permanent deprivation of the property. And when the property is destroyed, which is what is different from the case that we've been looking at, then there's no longer an adequate remedy. It may be part of a property that is available to you that is sufficient when the property is readily able to be returned. But permanent deprivation, I don't believe is sufficient. In Parrott, it was destroyed, right? There was the guy, the prisoner ordered his hobby kits or something, and the prison mishandled it and destroyed it. And the court said, that's very bad. It shouldn't have happened. But you have a post-deprivation remedy. What makes this case different from Parrott? Your Honor, I am hesitant to say this, but I am suddenly blanking on the facts of Parrott, and I apologize. As described to me, I don't see the difference. What about Zitter, the oyster case? Are you aware of those facts? If some of the oysters were illegally bred, that's one situation. Some of the property that was seized was not illegally obtained. It was his personal property, but there was still a remedy for it. Why wouldn't it be Zitter then, as to the not-oyster part of that decision? I apologize, Dan. When it comes to Zitter, the difference there is that the oysters that were destroyed were something he had no legal right to. But the property was retained, he did have the legal right to get, and it had not been destroyed. But there was still an adequate remedy to avoid a constitutional violation there. Not as to the oysters, but just the other stuff, because he could get dollar compensation for the other property, right? So I'm asking, why isn't this like the non-oyster part of that case? My memory of the facts of Zitter were that the non-oyster part of the property was still available. It had not been destroyed. What damages would you be seeking if you were granted the opportunity to get back into court? Of course, we would be seeking... The value of the property. We would be seeking alternative damages and an amount to be determined by the jury. And compensatory damages, I know we put it down in initial disclosures for the compensation of the constitutional right, and I do not recall that amount. But it was more than the value of the value. So you want us to basically have a rule, and maybe I haven't thought about it, but I don't know if this would fly or not. I don't know if the case is supported. But you want basically a rule that where there's been a pre-deprivation seizure, a seizure with no opportunity to be heard, and where the post-deprivation remedy is only compensating for the dollar of that amount. That where the property is no longer available, you're entitled to punitive damages for the violation of the constitutional right. You're entitled to constitutional damages. So by definition, the post-deprivation civil remedy is not adequate, and you still have a due process Fourth Amendment claim because of the inadequacy of the post-deprivation remedy. That's the rule you want to promulgate here. It has to be, otherwise you're going to lose. Except to ask the blanket rule punitive damages, yes, you would. That is what we would. Well, but that is what you're asking, isn't it? If it's not punitive damages, how else do you avoid being able to recover in a state law claim for conversion? It seems to me the punitive damage aspect that you're arguing you're entitled to is what makes it different from the typical act of conversion. I don't know in New Jersey if you can recover punitive damages in an action for conversion or not, but if you could, then that would seem to eliminate that as an avenue where you would recover. I guess, yes, you're right, Your Honor. That is the position. Well, I had the same thought as Judge McKee. What precisely would entitle you to punitive damages in a case like this, and against whom would that claim be presented? At this point, Your Honor, the claim would be presented against Mr. Hellman, and it is the severity of the actions and the animosity that underlines the improper seizure and destruction of the very vehicle that was the avenue of his speech that was so detested by the defendants in this case. The vehicle that was destroyed was obviously an active part of Mr. Forshean's activism. That was what led to the animosity in this case, and I think that the very egregiousness of that constitutional violation is what would lead to the applicability of punitive damages. And that would be an issue for the jury, I guess, and interrogatory as to whether or not there was an evil motive on the part of the state officer, and if there were, that would arguably get you punitive damages, and then arguably that would be insufficient post-application compensation unless you can make the same argument under state law and an action for conversion in New Jersey. And that may be something, actually. Let me ask for 28 J letters, post-argument letters, on that issue. In New Jersey, under New Jersey law, is one entitled to punitive damages? It may or may not make a difference, but it would be helpful to get that answer, it seems to me. And Your Honor, what timeframe would you like that letter in? Can we get it 14 days from today? Is that too tight? Absolutely, Your Honor. No more than five pages, same as the supplemental briefs you submitted before in this case. Of course, you may be arguing against yourself, Mr. LaPierre. If you were to win that argument here, you would then be in a position where any future client who comes to you in an action for conversion seems to me he would be judicially stopped from arguing punitive damages. I don't know if judicial stop would apply here or not, because the parties are different. But that would be an interesting professional quandary. You could end up losing some money by winning here. And this is something from my colleagues. Nothing, thank you. We get Mr. McGuire's rebuttal, I guess. We're so generous before. I can't say generous because we're responding to our questions, but we have to go over. So we'll try to hold you to the two minutes or at least some reasonable proximity thereof on the rebuttal. Understood, Your Honor. Your Honors have been very indulgent. I appreciate it. I do want to touch on the second half of the qualified immunity analysis. And I think the court's questioning of plaintiff's counsel reflects the issue there on qualified immunity, because even if there is some sort of constitutional violation here, the question would be whether a reasonable public servant in Mr. McGuire, you don't want to go there. Last night I was mentioning this to my colleagues before we went on live, because I was wondering whether or not we've got a state statute here. It's not a constitutional precedent. I don't think that matters under our law. Clearly, it doesn't under the case together with a gun that we've been talking about. But I thought, well, wouldn't it be interesting? I'll ask a layperson. So last night I asked a layperson, could I take property from someone else? Let's say I'm acting on the part of the government. Could I take property from somebody else? I don't give them any opportunity to get that money back, and I don't pay them for that property. And the answer I got back was, this is an exact quote, that would be mean and that would be wrong. The mean goes to Mr. Lafayette's arguments for damages. The person I asked was my five-year-old granddaughter, and she knew that right away. She didn't hesitate. She immediately responded, no, Grandpa, that would be mean and that would be wrong. So why wouldn't somebody who is an attorney whose position is to deal with this stuff, why wouldn't he know? If Abigail was here, why wouldn't he know? And, Your Honor, the question to the court reflected the analysis under Revel and under Zitter take into account the right to get a post-deprivation remedy, including tort damages, and therefore Yeah, that's different. Isn't what you're arguing for something where the exception swallows the rule? If the rule is a pre-deprivation hearing, notice an opportunity to be heard, but your argument is, we can always give you money after the fact. What's left of the Matthews versus Eldridge? What's left of the idea of procedural due process if all it means is, hey, sit down, be quiet, I'll give you money later? Ultimately, the goal of the legal system is to make the plaintiff whole. No, ultimately, the goal of procedural due process is to see that there is procedural due process. That money is a poor substitute for proper government action. We have to figure some way to compensate people when their constitutional rights are deprived, but what the government is trying to accomplish here, that is, the Constitution is trying to accomplish here, is to secure to the people procedural due process. Now, what's left of procedural due process if the state can, without any notice, any opportunity to be heard, take your things and destroy them and then say, hey, there's no problem with the Constitution here. We can just give you money later. That is not due process, and that's why the court sets forth in Revelle. There are a number of different avenues available other than post-deprivation. The guy got the gun back. That is a very tragic case because he did spend some time in jail, and he was acting in a way that I would assume we'd all want someone to act. I'm taking a gun from one jurisdiction to another, but we still said, well, you got your gun back. You had a way to get the gun back. This is different. What if Revelle's guns had been destroyed and never saw them again? And then the issue would be whether a post-deprivation monetary compensation would be available. Then we'd be in the land of Edward Fortune. But in this instance, the argument is that there was not just that remedy, but the other remedies under the criminal procedures and an action for reclaiming that were available. And as a closing note, Your Honors, I understand that the allegations of this complaint are troubling to the court and that the facts as presented suggest that not everybody did what they were supposed to do under the law. But Mr. Fortune has had adequate opportunity. He has presented a lengthy complaint where he's had three opportunities to identify the cast of characters who were involved in all of these events. He identified your client. Respect for that. Correct. And I think part of the court's frustration, and I apologize, is that my role here is to just focus on Mr. Hellman. And I understand. And you've done that admirably. So let me ask you this. Let's assume for the sake of discussion, we thought, well, Mr. McGuire raised a significant concern here. Does the fact that Mr. Fortune did not cross-appeal prevent us from saying it's an issue now whether the district court was right to dismiss all those other people? That's fairly put an issue by the position taken by the defense here that indicates, well, we should just vacate the whole thing. It ought to go back. It ought to go back, and the district court ought to allow the development of a record before saying dismissed here and dismissed there because it's not clear who the real bad actor is. Your Honor, I don't think that this court needs to take that approach. Well, we may not need to. I'm asking you as a practice. We're in the justice business here, and you're saying, hey, it's unjust to make Mr. Hellman bear the brunt of this because he's just not the guy. If he's not the guy, then was it wrong for the district court to send all those other people out of the case before a record had been developed and it was clear who the guy is who's responsible for the decision that deprived Mr. Fortune of his property with no notice or opportunity to be heard? And the response to that, Your Honor, is if this court were to reverse and find that Mr. Hellman was not, in fact, potentially liable and the claims against him should have been reversed, that would dispose of the last remaining liability? That's the problem. And we're not saying we would say he's not responsible. The argument that you're presenting is he's not the guy. And I'm just asking a question. If he's not the guy, does that not put an issue, the whole of the district court's opinion, whether there was a cross appeal or not? I'm asking you a procedural question in this context. Does that mean all that is done? Or does granting what you're asking for put in issue the dismissal of all the other defendants by saying, hey, you know what, there's an assertion here by the last remaining defendant that he's not the person. Therefore, in justice, there ought to be the development of a record. Or is that problematic to do that? What do we do in a circumstance? Maybe we say that's just tough because Mr. Forshen should have cross appealed. Or do we not say that because he really couldn't have cross appealed given that this was a qualified immunity defense appeal? Where are we? Well, here's where we are, Judge Jordan. There were, aside from Mr. Hellman, there was another active defendant in the district court. And that action is actually continued forward even while this appeal, which was made based on the collateral order doctrine, came up here. So if this court were to make a determination on this appeal, it would turn all of the other orders in the case into final appealable orders. If we ruled for you, it would. Correct. Right? But if we said, you know what, yeah, we think there's issues of fact here. And we sent it back. And we said, maybe there needs to be a factual development here. Maybe those people that got dismissed, that might have been premature. Then we wouldn't be actually reinstating anything. All we would be saying to the court is, you know, we've got some questions about this. And then the district court and the plaintiff will do what they're going to do. And those other defendants will do what they're going to do. I mean, I guess I'm just asking you for your take on whether we would be you think we'd be coloring inside or outside the lines if we said something like that. Your Honor, I think I like to cry on the inside of the line because the traditional path of making determination here, if it is against Mr. Hellman, that case has been going still going on and is still moving forward. It was not stated in the district court. So that would just mean that that case would carry on. If this court grants reversal and says that it should be dismissed, my understanding is that would then have dismissed all of the active claims because the other defendant in the case got out because the plaintiff's failure to provide discovery in a recent order. And that would convert the record, that would convert all of the orders below into final appealable orders that could come before this court under full briefing. Okay, thanks. Thank you, Your Honor. Is this pointing to anything else? Is it Jordan? I'm good, thank you. No, nothing for me. Okay. Counselor, I sent a note to our clerk, Patrick, in the chat box during the argument asking him for a transcript. I may well, when we get the transcripts and I start reading it, I may well regret having done that. But he will discuss with you the details of the transcripts. And I asked him to have the government pay for the transcript rather than spending costs. It would take matter under advisement.